## Nine Four Two Home Association Appeal

*Harry V. Kline,* for appellant.

*Robert J. Wallet,* Special Assistant Attorney General, for Commonwealth.

KALP, P.J., January 30, 1967.—This is an appeal from an order of the Pennsylvania Liquor Control Board (hereinafter called the board), dated December 5, 1966, directing that club liquor license no. C-5641 and the wholesale purchase permit issued in connection therewith to the Nine Four Two Home Association (hereinafter called the home association), McClure, Snyder County, Pa., be returned to the board for cancellation.

A petition for appeal was filed by the home association on December 19, 1966. The appeal was allowed by the court on the same date, and a hearing de novo was held January 9, 1967. It was ordered that the appeal would act as a supersedeas pending its disposition.

The facts are as follows: On September 9, 1941, a local option referendum concerning the sale of malt beverages and liquor was held in West Beaver Town-

ship, Snyder County, Pa. The township's two election districts voted thus:

| Malt Beverages | Precinct No. 1 | | Precinct No. 2 | |
|---|---|---|---|---|
| | For | 51 | For | 170 |
| | Against | 64 | Against | 172 |
| Liquor | | | | |
| | For | 50 | For | 170 |
| | Against | 65 | Against | 174 |

In 1953, a referendum on malt beverages alone resulted as follows:

| For | 40 | For | 128 |
|---|---|---|---|
| Against | 101 | Against | 335 |

The village of McClure, located in Precinct no. 2 of West Beaver Township and consisting of most of the territory of said precinct, was incorporated into a borough, known as the Borough of McClure, effective July 23, 1965.

On July 15, 1966, the home association, located in the Borough of McClure, filed an application with the board for a club liquor license.

On October 19, 1966, the board approved the home association's application and issued club liquor license no. C-5641 for a term to expire January 31, 1967.

On December 5, 1966, the board, by an opinion and order, cancelled the club's liquor license. The reasons given for the cancellation were that it was ". . . of the opinion that under the above related facts it, the Board, must now rescind the approval of the said application for a new club liquor license and require that the said license and wholesale purchase permit which were issued in error be returned to the Board for cancellation and, further, that the said application for the license must now be refused for the reason that the granting of such license in an area wherein the electors have cast a majority vote against the

granting of licenses for the retail sale of liquor and malt beverages is prohibited by law".

The question involved is: Does the Liquor Code of April 12, 1951, P. L. 90, sec. 101 et seq., as amended, 47 PS §1-101 et seq., and in particular, section 472, as amended, 47 PS §4-472, prohibit the granting of a license to an applicant located in a newly incorporated borough which was formerly part of a township whose majority of electors had earlier voted against the granting of licenses?

In other words: Does a local option status, once adopted by the people of a second class township, control the status of a part of that township's territory, which has subsequently been incorporated as a borough, without a vote of the electors living within the limits of the newly formed borough?

The home association argues that the incorporation of the Borough of McClure created a new sovereignty; that this is a contingency for which the legislature has not provided; and that, therefore, the newly created borough is not bound by the previous vote of the township on local option.

The only Pennsylvania case dealing with this matter which has come to the attention of the court is the unreported case of the Appeal of Seven Springs Farm, Inc., in the Court of Quarter Sessions of Somerset County, Pennsylvania, November sessions, 1964, no. 6. In that case, President Judge Thomas F. Lansberry found that the newly created Borough of Seven Springs, which had been carved out of Middlecreek Township, Somerset County, in 1964, was not bound by a local option election theretofore held in Middlecreek Township.

There are certain facts involved in the Seven Springs case which are not applicable to the case before the court. The borough consisted of several thousands of acres of land, providing both winter and

summer recreational facilities, and was occupied almost exclusively by a ski lodge and two hotels.

Be that as it may, this court is of the opinion that the theory of local option laws is: (1) that the electors of a township or other political subdivision shall have the right to determine their status; (2) the right to change it is according to the rules laid down by the legislature; (3) and, further, that a status once adopted attaches to the territory which was originally bound by the vote; and (4) such status remains in operation unless lawfully changed by a subsequent vote. The fact that part of the original township has become a borough, or a new political entity, does not change the local option status of the territory within the borough.

In jurisdictions other than Pennsylvania's, there is a difference of opinion concerning the effect of a change in the status, or reclassification, of a municipality which is located within a governmental unit that has adopted a status under a local option law. However, the majority view appears to be in accord with that expressed in this opinion: Hughes v. Parish Council of the Parish of East Baton Rouge, 48 S. 2d 823; Annotation 25 A. L. R. 2d 863, and cases cited therein.

It is unfortunate that the board issued the license in the first instance "in error", thus putting the home association to considerable expense and inconvenience. Nonetheless, the court is of the opinion that until the Borough of McClure sees fit to hold a referendum on the sale of malt beverages and/or liquor, its status remains "dry".

The court, therefore, enters the following

ORDER

And now, January 30, 1967, the appeal of the Nine Four Two Home Association is dismissed, and the order of the Pennsylvania Liquor Control Board,

dated December 5, 1966, revoking the home association's club liquor license is sustained. Costs to be paid by the association.